MEYERS and another *v.* SHURTLEFF.

*(Circuit Court, D. Oregon.* May 13, 1885.)

**DUTIABLE VALUE OF IMPORTED MERCHANDISE—VALUE OF COVERING NOT TO BE INCLUDED THEREIN.**

Section 7 of the act of March 3, 1883, (22 St. 523,) not only repeals section 2907 of the Revised Statutes, authorizing the value of the "covering" to be added to the wholesale price of imported merchandise for the purpose of ascertaining its dutiable value, but positively prohibits the value of such "covering" from being estimated as a part of such dutiable value, and therefore the value of barrels in which Portland cement is imported cannot be added to the wholesale price of the latter as an element of its dutiable value.

Action to Recover Excess of Duties Paid to the Collector.

*Erasmus D. Shattuck* and *Robert L. McKee,* for plaintiffs.

*James F. Watson,* for defendant.

DEADY, J. This action is brought by the plaintiffs to recover the sum of $626.71, alleged to be an excess of duties paid to the defendant as collector of this port. It is stated in the complaint that on September 10, 1884, the plaintiffs imported from London to this port 1,073⅓ tons of Portland cement, contained in 6,439 barrels, and of the value at London of $3,133.34; that said "barrels were only coverings or holders, and only the usual and necessary outside packages for the transportation and protection of the cement contained therein, and were and are of no commercial value after the removal of the contents thereof; that said barrels were not of any material or form designed to evade duties thereon, or designed for use otherwise than in the *bona fide* transportation of goods, to-wit, cement, to the United States." The complaint then states in detail the entry of the cement at the custom-house, and the valuation of the barrels as a part of the dutiable value of the cement, and the imposition of a duty of 20 per centum thereon, amounting to $626.71, which the plaintiff, on October 3, 1884, paid under protest, and that said barrels were not dutiable; the subsequent appeal to the secretary of the treasury, and his affirmation of the action of the the collector. The defendant demurs to the complaint, for that it does not state facts sufficient to constitute a cause of action.

By the Schedule A of the act of March 3, 1883, (22 St. 493,) "Cement—Roman, *Portland,* and all others," imported from foreign countries, is made subject to pay a duty of "20 per centum *ad valorem.*" The rule prescribed for the government of the collector of customs, in ascertaining the dutiable value of imported merchandise for the purpose of estimating the *ad valorem* duty to be levied thereon, has for the past 20 years, within certain limits, been constantly changing. From the act of July 31, 1789, (1 St. 41,) to that of March 1, 1823, (3 St. 732,) the rule was that the value of "outside packages" should not be considered a part of the cost of the goods. From the latter to

the act of June 30, 1864, (13 St. 217,) the law appears to have been silent on the subject.

By section 16 of the act of August 30, 1842, (5 St. 563,) "the actual market value or wholesale price" of the article imported, "at the time when purchased in the principal markets of the country" from whence imported, together with all costs and charges, except insurance, and including in every case a charge for commissions at the usual rates," is made "the true value at the port where the same may be entered upon which duties shall be assessed."

By section 1 of the act of March 3, 1851, (9 St. 629,) the value of the article is required to be ascertained at "the period of exportation," instead of the "time" of purchase. By section 25 of the act of March 2, 1861, (12 St. 197,) this time is changed to "the day of actual shipment," when the same appears from the bill of lading.

By section 24 of the act of June 30, 1864, (13 St. 217,) "the actual value" of the goods was required to be taken when "on shipboard, at the last place of shipment to the United States;" to be "ascertained by adding to the value of such goods at the place of growth, production, or manufacture, the cost of transportation, shipment, and transhipment, with all the expenses included, from the place of growth, production, or manufacture, whether by land or water, to the vessel in which shipment is made to the United States; the value of the sack, box, or covering of any kind, in which such goods are contained, commission at the usual rate, in no case less than $2\frac{1}{2}$ per centum; brokerage and all export duties; together with all costs and charges paid or incurred for placing said goods on shipboard, and all other charges specified by law.

By section 67 of the act of March 3, 1865, (13 St. 493,) the collector is required "to cause the actual market value or wholesale price" of the goods, "at the period of exportation to the United States in the principal markets of the country" from whence they are imported, "to be appraised, and such appraised value shall be considered the value upon which duty shall be assessed;" and section 24 of the act of 1864, *supra*, is expressly repealed, and also "all acts and parts of acts requiring duties to be assessed upon commissions, brokerage, cost of transportation, shipment, transhipment, and other like costs and charges incurred in placing any goods, wares, or merchandise on shipboard."

By section 9 of the act of July 29, 1866, the pendulum was swung back again to the war tariff of 1864, so that "in determining the dutiable value of merchandise" the collector was required to add "to the cost or to the actual wholesale price or general market value at the time of exportation in the principal markets of the country" from whence the same is imported into the United States, "the cost of transportation, shipment, and transhipment, with all the expenses included, from the place of growth, production, or manufacture, whether by land or water, to the vessel in which the shipment was made to the

United States; the value of the sack, box, or covering, of any kind, in which such merchandise is contained; commission at the usual rates, but in no case less than 2½ per centum; brokerage, export duty, and all other actual or usual charges for putting up, preparing, and packing for exportation and shipment."

These sections of the acts of 1865 and 1866 were carried into the Revised Statutes,—the former being section 2906 of that compilation, and the latter, section 2907. Section 7 of the act of March 3, 1883, (22 St. 523,) repeals the latter of these sections, as well as section 2908, and provides that "hereafter none of the charges imposed by said sections, or any other provision of existing law, shall be estimated in ascertaining the value of goods to be imported; *nor shall the value of the usual and necessary sacks, crates, boxes, or covering of any kind be estimated as part of their value in determining the amount of duties for which they are liable:* provided, that if any packages, sacks, crates, boxes, or coverings of any kind shall be of any material or form designed to evade duties thereon, or designed for use otherwise than in the *bona fide* transportation of goods to the United States, the same shall be subject to a duty of 100 per centum *ad valorem* upon the actual value of the same."

It is understood that the action of the collector in this case was had in obedience to the instructions of the treasury department, acting under the advice of the department of justice contained in an opinion of January 11, 1884, in which it is said that the only change affected by section 7 of the act of 1883, "as regards the basis on which *ad valorem* duties are to be estimated," "is to exclude from such basis all costs and charges which, under the law as it previously stood, were required to be *added* to the current or actual market value or wholesale price of the merchandise in the principal markets of the country whence the same was imported, or of the country of production or manufacture, as the case might be. Thus the current or actual market value or wholesale price in these markets, which is to be appraised, is now made the *sole basis* for estimating such duties."

The "costs" and "charges" of which these statutes speak, unless otherwise expressly stated, are the items of expense incurred by the importer in and about the purchase of goods, and afterwards, and before their arrival at the port of entry. They do not, unless specially mentioned, include the cost of the sack, box, or covering in which the goods are usually contained and purchased. And it may be admitted that when the statute declares "without more"—without qualification—that the dutiable value of imported merchandise is "the actual market value or wholesale price" in the principal markets of the country whence the same is imported, that such value includes the cost of the sack, box, or covering in which it is usually contained and purchased. *Cobb* v. *Hamlin*, 3 Cliff. 200. The cost or expense of the covering usual and necessary for the protection and transpor-

tation of an imported article from the place of purchase, is, as a matter of fact, an element of its value at such place. And the only question in this case is whether or not congress has said, without qualification, that the dutiable value of this cement is "the actual value or wholesale price" in London. And, *first*, although the "actual value" of an article in the country where purchased, does, in the abstract, include the cost of the outside package in which it is contained and placed for shipment, yet it is plainly inferable from the terms of the legislation on the subject, as above stated, that whenever congress has intended to include that expense in such value as a basis for estimating duties, it has expressly said so. To go no further back than 1864, that act expressly provided that the "dutiable value" of goods should be their value on shipboard, to be ascertained by *adding* to their value at the place of growth, production, or manufacture, among other things, "the value of the sack, box, or covering of any kind" in which they are contained. The act of 1865 simply made the "dutiable value" of goods their "actual market value" at the period of exportation, and expressly repealed section 24 of the act of 1864, requiring the value of the "covering" to be considered in ascertaining such "market value," while the act of 1866 simply restored the rule of valuation prescribed by the act of 1864.

From this statement of congressional action or legislative habit on this subject, it may fairly be inferred that the expense of the "covering" of imported merchandise is never to be included in ascertaining the "dutiable value" thereof, unless the statute expressly so provides. And therefore, if the act of 1883 did nothing more than repeal section 2907 of the Revised Statutes, (section 9 of the act of 1866,) authorizing the value of such "covering" to be *added* to the "wholesale price," in determining the "dutiable value" of this merchandise, there would be no legislative authority for adding the value of the barrels to the value of the cement, as a basis of estimating the duty on the latter. But when it is considered that the act of 1883 not only repeals section 2907 of the Revised Statutes, authorizing the value of the barrel to be added to that of the cement, but also expressly prohibits the value of the former to "be estimated as a part of the value" of the latter "in determining the amount of duties for which it is liable," the case is too plain for argument. The mere statement of it is sufficient. There is no room for construction or difference of opinion.

The act of 1883 is both explicit and peremptory. It not only prohibits the "charges" or expenses incurred in and about the purchase of the goods and their shipment from being added to their actual value or wholesale price, but it goes further, and, apparently out of abundance of caution, adds: "Nor shall the value of the usual and necessary sacks, crates, boxes, or covering of any kind, be estimated as part of their [imported goods] value in determining the amount of duties for which they [imported goods] are liable."

The demurrer in this case admits that the value or cost of the bar-

rels in London was estimated in ascertaining the dutiable value of the cement, and that the former is the usual and necessary covering for the protection and transportation of the latter. It is impossible to sustain the legality of this valuation, or the collection of the duties thereon, without absolutely ignoring this prohibitory clause in section 7 of the act of 1883, as seems to have been done in the opinion of July 14, 1884.

The demurrer is overruled.